IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHAELINE WILLIAMS, *on behalf of herself and all others similarly situated*, Plaintiff, | § § § § | CIVIL ACTION NO. 5:17-cv-1264 |
| vs. | § § § | **CLASS COMPLAINT** Jury Trial Demanded |
| CONN APPLIANCES, INC., Defendant. | § | |

## NATURE OF ACTION

1. Plaintiff Michaeline Williams ("Mrs. Williams") brings this putative class action against Defendant Conn Appliances, Inc. d/b/a Conn's or Conn's HomePlus ("CAI") pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and the Texas Debt Collection Act ("TDCA"), Chapter 392 Tex. Fin. Code, individually and on behalf of all others similarly situated.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 47 U.S.C. § 227(b)(3), 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).

3. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Mrs. Williams' action occurred in this district, where Mrs. Williams resides in this district, and where CAI transacts business in this district.

## PARTIES

4. Mrs. Williams is a natural person who at all relevant times resided in the State of Texas, County of Comal, and City of Canyon Lake.

5. CAI is an entity headquartered in the State of Texas that sells home appliances and other goods through various retail locations.

1

6. CAI's customers often sign promissory notes and security agreements with Conn Credit Corporation, Inc. ("CCC") in connection with CAI's sale of its home appliances.

7. Upon information and belief, in these scenarios, CCC, CAI, and CAI's customers engage in an underwriting transaction wherein CAI becomes the servicer on CCC's loans.

8. Upon information and belief, both CAI and CCC are wholly-owned subsidiaries of Conn's Inc. ("Conn's"), a publicly traded company.

9. Upon information and belief, CAI places collection calls in an attempt to collect loans issued by CCC as the servicer.

10. Upon information and belief, CAI is the entity that placed the calls that give rise to this TCPA action.

11. CAI is an entity who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "consumer debt," as defined by Tex. Fin. Code § 392.001(2).

12. CAI is a "debt collector" as defined by Tex. Fin. Code § 392.001(6).

**FACTUAL ALLEGATIONS**

13. Mrs. Williams is the regular and customary user of a cell phone that has been assigned a telephone number ending - 6378 (hereinafter "the -78 number").

14. Mrs. Williams' husband is the regular and customary user of a cell phone that has been assigned a telephone number ending - 6379 (hereinafter "the -79 number").

15. In December 2016, Mrs. Williams went to a CAI retail location with her husband, because her husband wanted to purchase a television for their son for Christmas.

16.     After her husband selected a television that he wished to purchase, Mrs. Williams accompanied her husband while he sat down with a CAI employee at a desk to arrange for the purchase and finance of the television.

17.     While preparing the purchase and financing application ("the Application"), the CAI employee asked for Mrs. Williams' husband's phone number.

18.     Mrs. Williams' husband gave his number, but because their numbers are similar, he sometimes has trouble remembering which number is his and which number is his wife's.

19.     Thus, Mrs. William and her husband first had a discussion in the presence of the CAI employee about the fact that Mrs. Williams' number is the -78 number, while her husband's number is the -79 number.

20.     Mrs. William and her husband later discovered that both numbers were listed on the Application.

21.     Upon information and belief, the CAI employee put down both numbers on the Application after learning of Mrs. Williams' number from the aforementioned discussion.

22.     Mrs. Williams did not give CAI consent to call her or the -78 number.

23.     Neither Mrs. Williams nor her husband intended for the -78 number to be included in the Application or indicated to the CAI employee that it should have been included.

24.     Mrs. Williams was not listed as a borrower or co-borrower on the Application.

25.     Mrs. Williams had already purchased a Christmas gift for their son from a different retailer, and, in fact, the only reason she went to the CAI retail location was because her husband needed her to drive him, due to his medical condition.

26.     Mrs. Williams did not look at the Application.

27.     Mrs. Williams did not sign the Application.

28. Upon information and belief, CAI did not perform a credit check on Mrs. Williams in connection with the Application or her husband's purchase of the television.

29. Mrs. Williams' husband signed the Application (which, upon information and belief, contained both numbers), but did so without realizing that the CAI employee had put the -78 number on it.

30. Mrs. Williams' husband did not have actual authority to, nor did he intend to, nor did he, in fact, give CAI consent to call Mrs. Williams or to call the -78 number.

31. In late April 2017, Mrs. Williams' husband became late on his monthly payment.

32. On or before April 30, 2017, CAI began placing calls to Mrs. Williams on her cell phone at the -78 number.

33. CAI placed multiple calls to Mrs. Williams' cell phone until May 8, 2017.

34. Mrs. Williams informed CAI on at least one occasion before May 8, 2017 that she was not a customer of CAI.

35. CAI continued calling Mrs. Williams' cell phone despite the fact that she was not a CAI customer and in spite of her statement that she was not its customer.

36. During a call on May 8, 2017, Mrs. Williams instructed CAI to stop calling her.

37. Upon information and belief, CAI stopped calling her thereafter.

38. The aforementioned calls caused Mrs. Williams to feel harassed, taken advantage of, embarrassed, and humiliated.

39. Upon information and belief, the telephone calls identified above were placed to Mrs. Williams' cell phone using an automatic telephone dialing system.

40. During the above-referenced calls, Mrs. Williams heard a moment of silence or dead air at the beginning before being connected to CAI's collection agent.

41. Furthermore, it is widely known that CAI relies on the use of an automated dialing system ("the System") to call consumers several times per day in order to collect on high-interest financing agreements into which they enter at CAI's retail stores.

42. Conn's 2017 Annual 10-K Report to the SEC states that it "employ[s] a credit collection strategy that includes dialer-based calls, virtual calling and messaging systems…."

43. The System is a predictive dialer.

44. In addition or in the alternative, the System has blast dialing capabilities, allowing it to make a large volume of calls in a short amount of time without human intervention.

45. Because (upon information and belief) the CAI employee put the -78 number on the Application, CAI would have called the -78 number using the System, rather than manually dialing the number, since CAI would have treated the -78 number as one it had consent to autodial under the TCPA.

46. At all times, CAI lacked Mrs. Williams' prior express consent to call her on her cell phone using the System.

47. CAI did not place any calls to Mrs. Williams' cell phone for emergency purposes.

48. Upon information and belief, the CAI employee knew that putting the -78 number on the Application meant that CAI would call Mrs. Williams on her cell phone without her consent using the System if her husband became late on his monthly payment.

49. In general, CAI only stops calling its customers through the System when they are current on their account or promise to make a past due payment within a certain period of time.

50. Many CAI's customers make their monthly payments at the CAI retail store where they purchased their furniture.

51. Conn's 2017 Annual 10-K Report to the SEC states that "during fiscal year 2017, [it] received 35.2% of the payments on credit accounts in [its] store locations.…"

52. Many CAI's customers find CAI's dialing and collection practices to be harassing and abusive.

53. As a business practice, CAI relies on the harassing nature of the repeated and continuous calls it places through the System to pressure its customers into making their monthly payments.

54. It is, therefore, likely that the CAI employee who (upon information and belief) put the -78 number on Mrs. Williams' husband's application would have learned of CAI's calling practices from a customer who went to the CAI store to make payment.

55. Thus, the CAI employee intended for CAI to place repeated and continuous calls with the intent of harassing Mrs. Williams in the event that her husband was late on his monthly payment.

56. Upon information and belief, CAI maintains business records that show all calls CAI placed to Mrs. Williams' cell phone, which may reveal the existence of additional violations beyond those pleaded above.

## CLASS ALLEGATIONS

57. Mrs. Williams repeats and re-alleges all factual allegations above.

58. CAI has a practice of hoarding as many potentially valid phone numbers for a particular account as possible.

59. CAI routinely uses the System to call more than one or all of these hoarded numbers which have become associated with a customer's account, including cell phone numbers, even when the number does not belong to the customer or a co-borrower.

60. In addition to entering telephone numbers for non-customers into credit applications that its employees learn of during the sales or collections process, CAI has a practice of identifying phone numbers from public or commercial databases that it believes, but does not know to be, valid numbers for its customers using a practice known as skip-tracing.

61. For example, Conn's 2017 Annual 10-K Report to the SEC states it "utilize[s] current technologies that assist us in locating contact information for customers who have moved and left no contact information."

62. Numbers obtained through skip-tracing often locates cell phone numbers that belong to an individual with a similar name or address, but not the individual CAI is intending to reach and who it has no consent to call.

63. CAI knows that the individuals it calls at these hoarded numbers did not consent to receive calls to the numbers, and that many of the individuals are not actually its customer, borrowers, or co-borrowers, but it places continuous and repeated calls to them because it may achieve its goal of harassing them or their family-member-customer into making payment.

64. Mrs. Williams brings this action on behalf of herself and all others similarly situated. Specifically, Mrs. Williams seeks to represent a class defined as:

> Individuals who were not CAI's customers, borrowers or co-borrowers in connection with a CAI account, to whose cell phone numbers CAI, in the four years prior to the filing of the original complaint in this action through the date of class certification, made calls using the System in connection with such account.

65. The proposed class specifically excludes the United States of America, the State of Texas, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Fifth Circuit, and the Justices of the United States Supreme Court, all officers and agents of CAI, and all persons related to within the third degree of consanguinity or affection to any of the foregoing persons.

66. The class is averred to be so numerous that joinder of members is impracticable.

67. The exact number of class members is unknown to Mrs. Williams at this time and can be ascertained only through appropriate discovery.

68. The class is ascertainable in that the cell phone numbers of all class members are contained within business records maintained by CAI, and class members' names and/or addresses can be identified from the wireless carriers that provide service for the cell phone numbers of the class members.

69. There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented. These common questions of law and fact predominate over questions that may affect individual class members. Such issues include, but are not limited to: (a) the existence of CAI's identical conduct particular to the matters at issue; (b) CAI's violations of the TCPA; (c) the availability of injunctive relief for the TCPA class, (d) the availability of statutory penalties; and (e) attorney's fees and costs.

70. The claims of Mrs. Williams are typical of the claims of the class she seeks to represent.

71. The claims of Mrs. Williams and of the class originate from the same conduct, practice, and procedure on the part of CAI. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts.

72. Mrs. Williams possesses the same interests and has suffered the same injuries as each class member. Mrs. Williams asserts identical claims and seeks identical relief on behalf of the unnamed class members.

73. Mrs. Williams will fairly and adequately protect the interests of the class and has no interest adverse to or which directly and irrevocably conflicts with the interests of other class

members. Mrs. Williams is willing and prepared to serve this Court and the proposed class. The interests of Mrs. Williams are co-extensive with and not antagonistic to those of the absent class members.

74. Mrs. Williams has retained the services of counsel who are experienced in consumer protection claims, as well as complex class action litigation, will adequately prosecute this action, and will assert, protect and otherwise represent Mrs. Williams and all absent class members.

75. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) and 23(b)(1)(B). The prosecution of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

76. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards of conduct and varying adjudications, on what would necessarily be the same essential facts, proofs and legal theories, would also create and allow the existence of inconsistent and incompatible rights within the class.

77. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) in that CAI has acted or refused to act on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

78. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) in that the questions of law and fact that are common to members of the class predominate over any questions affecting only individual members.

79. Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint in that: (a) individual claims by the class members will be impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake; (b) as a result, very little litigation has been commenced over the controversies alleged in this Complaint and individual members are unlikely to have an interest in prosecuting and controlling separate individual actions; and (c) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy.

## COUNT I
## VIOLATION OF 47 U.S.C. § 227(b)(1)(A)(iii)

80. Mrs. Williams repeats and re-alleges each and every factual allegation above.

81. CAI violated 47 U.S.C. § 227(b)(1)(A)(iii) placing telephone calls to Mrs. Williams' cell phone using the System when it lacked consent to do so.

82. CAI violated 47 U.S.C. § 227(b)(1)(A)(iii) willfully and/or knowingly when its employee placed Mrs. Williams' cell phone number on the Application, even though neither she nor her husband gave CAI consent to call her or her number.

83. In addition or in the alternative, CAI violated 47 U.S.C. § 227(b)(1)(A)(iii) willfully and/or knowingly by placing calls to Mrs. Williams' cell phone using an automatic telephone dialing system and/or an artificial or pre-recorded voice after she told CAI that she was not its customer.

WHEREFORE, Mrs. Williams prays for relief and judgment, as follows:

a) Certifying the above class under Fed. R. Civ. P. 23, naming Mrs. Williams and her counsel as representatives of the class, and designating this Complaint as the operable complaint for class purposes;

b) Adjudging that CAI violated 47 U.S.C. § 227(b)(1)(A)(iii) with respect to Mrs.

      Williams and the class she seeks to represent;

   c) Enjoining CAI from placing any further telephone calls to Mrs. Williams and the class in violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(A);

   d) Awarding Mrs. Williams and the class she seeks to represent statutory damages in the amount of $500.00 per violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

   e) Awarding Mrs. Williams and the class she seeks to represent actual damages, pursuant to 47 U.S.C. § 227(b)(3)(B);

   f) Awarding Mrs. Williams and the class she seeks to represent treble damages, pursuant to 47 U.S.C. § 227(b)(3);

   g) Awarding Mrs. Williams and the class she seeks to represent reasonable attorneys' fees and costs incurred in this action;

   h) Awarding Mrs. Williams and the class she seeks to represent pre-judgment and post-judgment interest as permissible by law; and

   i) Awarding such other and further relief as the Court may deem just and proper.

## COUNT III
## TEX. FIN. CODE § 392.302(4)

84.    Mrs. Williams repeats and re-alleges each and every factual allegation above.

85.    CAI violated Tex. Fin. Code § 392.302(4) by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number.

WHEREFORE, Mrs. Williams prays for relief and judgment, as follows:

   a) Certifying the above class under Fed. R. Civ. P. 23, naming Mrs. Williams and her counsel as representatives of the class, and designating this Complaint as the operable complaint for class purposes;

b) Adjudging that CAI violated Tex. Fin. Code § 392.302(4) with respect to Mrs. Williams and the class she seeks to represent;

c) Awarding Mrs. Williams injunctive relief, and the class she seeks to represent, pursuant to Tex. Fin. Code § 392.403(a)(1);

d) Awarding Mrs. Williams, and the class she seeks to represent, actual damages pursuant to Tex. Fin. Code § 392.403(a)(2);

e) Awarding Mrs. Williams reasonable attorneys' fees and costs incurred in this action, pursuant to Tex. Fin. Code § 392.403(b);

f) Awarding Mrs. Williams, and the class she seeks to represent, any pre-judgment and post-judgment interest as permissible by the law; and

g) Awarding such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

86. Mrs. Williams is entitled to and hereby demands a trial by jury.

Dated: December 14, 2017

Respectfully submitted,

/s/ Russell S. Thompson IV
Russell S. Thompson IV
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave. D106-618
Mesa, AZ 85206
Telephone:   602-388-8898
Facsimile:   866-317-2674
rthompson@consumerlawinfo.com
Attorney for Plaintiff